# **EXHIBIT 1**

# MEMBERSHIP INTEREST PLEDGE AGREEMENT

**THIS MEMBERSHIP INTEREST PLEDGE AGREEMENT** (this "Agreement") is made and entered into this 8th day of October, 2018, by and between Hunter Renfroe ("Debtor"), and GID Capital LLC, Dunbar Investments LLC and Sam Haskell (collectively the "Secured Party").

**WHEREAS**, the Debtor own 100% of the membership interests in Avondale Holdings, LLC, an Alabama limited liability company (the "Company");

**WHEREAS**, the Company owns certain real property located in Jefferson County, Alabama (the "Property"), and Debtor have been negotiating with (i) Secured Party for Secured Party to make a loan to the Debtor or an entity owned by Debtor in the amount of $1,350,000.00 (the "Loan");

**WHEREAS**, as a condition to making the Loan to Debtor, Secured Party is requiring Debtor to enter into that certain Secured Promissory Note dated of even date herewith (the "Note" and together with all other documents required by Secured Party in connection with the Loan, the "Loan Documents");

**WHEREAS**, in addition to all of the obligations of Debtor as set forth in the Loan Documents (collectively, the "Obligations"), as a condition to making the Loan to Debtor, Secured Party is requiring Debtor to pledge their respective membership interests in the Company to Secured Party pursuant to the terms and conditions herein; and

**WHEREAS**, Debtor now desire to enter into this Agreement to secure the Obligations and all renewals, extensions and modifications thereof pursuant to the terms and conditions herein.

**NOW, THEREFORE**, in consideration of the premises, the mutual promises hereinafter contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound hereby, hereby covenant and agree as follows:

1. <u>Pledge of Membership Interest</u>. In order to induce Secured Party to make the Loan, Debtor do hereby pledge, transfer, assign, hypothecate, convey and deliver to Secured Party all of their respective membership interests in the Company (collectively, the "Membership Interests"), and hereby grant to Secured Party a lien on and security interest in and to the Membership Interests and in all of the proceeds thereof, including all income, interest, dividends, cash, warrants, rights (financial or otherwise) and other property or proceeds from time to time received, receivable, or otherwise distributed in respect of or in exchange for any or all of the Membership Interests (hereinafter, collectively the "Pledged Interest"), as collateral security for the prompt and complete payment and performance of the Obligations. In connection with the foregoing grant of a security interest, Debtor hereby authorize the Secured Party to make and file UCC-1 Financing Statements with the Alabama Secretary of State for purposes of perfecting Secured Party's security interest in the Pledged Interest and to file such amendments to said

UCC-1 as are necessary to continue Secured Party's perfected security interest in the Pledged Interest.

2. <u>Distributions</u>. So long as there is no default by Debtor in performance of the Obligations, Debtor shall have the right to all distributions from the Company to which Debtor are entitled as the owners of the Pledged Interest. If at any time there is a default by the Company in performance of the Obligations, prior to any foreclosure upon the Pledged Interest under this Agreement, Debtor agree to promptly notify Secured Party of any distributions from the Company to Debtor in respect of the Pledged Interest whether in the form of cash, property, securities or otherwise, and to deliver the same to Secured Party as additional collateral security for the prompt and complete payment and performance of the Obligations within three (3) business days of Secured Party's request therefor. Debtor further agree that the Pledged Interest, and any substitutes therefore or additions thereto, which Secured Party in its sole discretion may elect to take, together with any interest, membership interest rights, rights to subscribe, distributions, new securities and other property to which Debtor may become entitled by reason of the ownership of the Pledged Interest during the existence of this Agreement, are to be held by Secured Party as continuous security for the Obligations.

3. <u>No Further Encumbrance.</u> Debtor hereby agree not to further encumber the Property or Company as of the date of this Agreement, nor to assign, transfer or convey membership interest to any other party or further encumber the membership interests without written consent from Secured Party.

4. <u>Secured Party's Remedies</u>. If the Company fails to perform the Obligations as required by the Loan Documents (an "Event of Default"), Secured Party may, at its option, and without demand or notice of any kind, proceed to enforce payment of the Obligations, and shall have, and may exercise, any or all of the rights and remedies of a secured party under the Uniform Commercial Code (the "UCC") or otherwise available to Secured Party by law and/or under the Loan Documents, and, without limiting the generality of the foregoing, Secured Party may:

(a) cause the Pledged Interest to be transferred to its name or to the name of its nominee or nominees (and Debtor hereby irrevocably appoint Secured Party as its attorney-in-fact for such purposes) and thereafter exercise as to the Pledged Interest all the rights, powers and remedies of an owner;

(b) collect by legal proceedings or otherwise all distributions, priority returns and other similar sums now or hereafter payable on account of the Pledged Interest, and hold the same as collateral, or apply the same to any of the Obligations secured hereby (the manner and distribution of such application to be in the sole discretion of Secured Party);

(c) enter into any extension, subordination, reorganization, deposit, merger or consolidation agreement, or any other agreement relating to or affecting the Pledged Interest, and in connection therewith deposit or surrender control of the Pledged Interest, and accept other property in exchange therefor and hold or apply such property or money so received in accordance with the provisions hereof; and/or

(d) without demand of performance or other demand, advertisement or notice of any kind (except the notice of time and place of public or private sale) to or upon Debtor (all and each of which demands, advertisements and/or notices are hereby expressly waived), forthwith sell, assign, give options to purchase, contract to sell or otherwise dispose of and deliver the Pledged Interest, or any part thereof, in one or more parcels at public or private sale or sales, at any exchange, broker's board or at any of the holder's offices or elsewhere upon such terms and conditions as Secured Party may deem advisable and at such prices as Secured Party may deem best, for future delivery without assumption of any credit risk, with the right to Secured Party upon any such sale or sales, public or private, to purchase the whole or any part of the Pledged Interest so sold, free of any right or equity of redemption in any Debtor, which right or equity is hereby expressly waived or released.

5. <u>Term</u>. Notwithstanding anything contained herein to the contrary, this Agreement shall remain in full force and effect until the satisfaction of all of the Obligations.

6. <u>Entire Agreement; Modification of Agreement</u>. This Agreement constitutes the entire understanding of the parties hereto with respect to the subject matter hereof. This Agreement may not be modified, altered or amended except by agreement in writing signed by all of the parties hereto.

7. <u>Governing Law</u>. This Agreement shall be governed by, and construed in accordance with, the laws of the State of Alabama. The rights of Secured Party specified herein shall be in addition to, and not in limitation of Secured Party's rights under the UCC, as amended from time to time, or any other statute or rule of law conferring rights similar to those conferred by the UCC, and under the provisions of the Loan Documents.

8. <u>Counterparts</u>. This Agreement may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed shall constitute an original, but all of which when taken together shall be one and the same instrument.

9. <u>Severability</u>. Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law; provided, however, if any provision of this Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.

10. <u>Costs of Collection</u>. Debtor hereby agree to pay all costs of Secured Party's collecting or attempting to collect hereunder, including a reasonable attorney's fee.

11. <u>Proceeds of the Pledged Interest</u>. Proceeds of the Pledged Interest are claimed by Secured Party, but this does not constitute consent by Secured Party to the sale of the Pledged Interest without Secured Party's written consent.

12. <u>No Waiver</u>. No failure on the part of Secured Party to exercise, and no delay in exercising, any right or remedy hereunder shall operate as a waiver thereof by Secured Party, nor

shall any single or partial exercise by Secured Party of any right or remedy hereunder preclude any other future exercise thereof or the exercise of any other right or remedy.

13. <u>Assignment</u>. This Agreement and all of the provisions hereof shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns. Neither Debtor may assign its obligations under this Agreement without the prior written consent of the other Debtor and Secured Party. Secured Party may assign its rights under this Agreement without the prior written consent of Debtor. Should this Agreement be assigned by Secured Party to another party, the term "Secured Party" as used herein shall be deemed to refer to any such assignee.

14. <u>Representations and Warranties</u>:

To induce Lender to enter into this Agreement, and to make the Loan to Borrower, Borrower represents and warrants to Lender as follows:

Existence, Power, and Qualification. Borrower is a duly organized and validly existing limited liability company, has the power to own its properties and to carry on its business as is now being conducted, and is duly qualified to do business and is in good standing in the State of Alabama and in every jurisdiction in which the character of the properties owned by it or in which the transaction of its business makes its qualification necessary.

Power and Authority. The Loan Documents have been duly executed and delivered to Lender and each Loan Document constitutes the legal, valid, and binding obligations of Borrower, Guarantor, and each other Person a party thereto, as applicable, enforceable in accordance with the terms thereof (subject, as to enforceability, to limitations resulting from Lenderruptcy, insolvency, and other similar laws affecting creditors' rights generally).

Compliance with Law. The Facility and the intended use thereof for the purpose and in the manner contemplated by this Agreement are permitted by and comply in all material respects with all presently applicable use or other restrictions and requirements in prior conveyances, zoning ordinances, and all development, pollution control, water conservation, environmental, and other laws, regulations, rules, and ordinances of the United States and the State of Alabama and the respective agencies thereof, and the political subdivision in which the Facility is located.

Pending Matters. There is no suit, action, or proceeding pending or, to the best knowledge of Borrower or Guarantor, threatened, against or affecting Borrower or Guarantor before or by any court, arbitrator, administrative agency, or other governmental authority that if adversely determined would materially and adversely affect Borrower, Guarantor, or the businesses, properties, operations, assets, or condition (financial or otherwise) of Borrower or Guarantor, or the validity of any of the transactions contemplated by the Loan Documents, or Borrower's or Guarantor's ability to perform the obligations hereunder or thereunder or as contemplated hereby or thereby.

Financial Statements. All financial statements heretofore or hereafter provided by Borrower or Guarantor are and will be true and complete in all material respects as of their respective dates and fairly present the financial condition of Borrower or Guarantor, and there are no material liabilities, direct or indirect, fixed or contingent, as of the respective dates of such statements which are not reflected therein or in the notes thereto or in a written certificate delivered with such statements. There have been no material adverse changes in the financial condition, operations, or prospects of

Borrower or Guarantor since the dates of such statements except as fully disclosed in writing with the delivery of such statements. All financial statements of the operations of the Facility heretofore or hereafter provided to Lender are and will be true and complete in all material respects as of their respective dates.

Taxes. Borrower and Guarantor have filed all federal and state tax returns and informational reports required to be filed, which returns properly reflect the taxes owed by it for the period covered thereby and Borrower and Guarantor have paid all taxes that are due pursuant to said returns and paid all present installments of any assessments, fees, and other governmental charges upon it or upon its property.

Approvals. No consent, approval, or authorization of or permit or license from or registration with or notice to any federal or state regulatory authority or any third party is required in connection with the making or the performance of the Loan Documents, the Facility, or with respect to any other aspect of the Facility or the Mortgaged Property, or, if so required, such consent, approval, authorization, permit, or license has been requested and obtained or such registration made or notice given or such other appropriate action taken on or prior to the date hereof.

No Default. Neither Borrower nor Guarantor is in default of a material provision under any material agreement, instrument, decree, or order to which it is a party or to which its property is bound or affected.

No Material Adverse Change. There has been no material adverse change in the financial condition of Borrower or Guarantor since the date of delivery of Borrower's and Guarantor's financial statements previously delivered to Lender.

Priority of Mortgage. The Mortgage constitutes a valid first lien against the Mortgaged Property, prior to all other liens or encumbrances, and those liens which may hereafter accrue, excepting only Permitted Encumbrances which do not and will not materially and adversely affect (a) the ability of Borrower to pay in full the principal of and interest on the Note when due, (b) the security (and its value) intended to be provided by the Mortgage or (c) the current use of the Land and the Improvements. There are no claims for payment for work, labor or materials affecting the Mortgaged Property which are or may become a Lien prior to, or of equal priority with, the Liens created by the Loan Documents.

Title to Mortgaged Property. Borrower has good and marketable title to all of the Mortgaged Property, subject to no lien, mortgage, pledge, encroachment, zoning violation, or encumbrance, except Permitted Encumbrances which do not materially interfere with the security intended to be provided by the Mortgage or the current use or operation of the Land and the Improvements.

Other Obligations: Outside its first mortgage with Oakworth Lender, Borrower has no material financial obligation under any indenture, mortgage, deed of trust, loan agreement, or other agreement or instrument to which Borrower is a party or by which Borrower or the Mortgaged Property is otherwise bound, other than obligations incurred in the ordinary course of the operation of the Company, and obligations under the other Loan Documents. Borrower is not a party to any agreement or instrument or subject to any restriction which might materially and adversely affect Borrower or the Mortgaged Property, Borrower's business, properties or assets, operations or condition, financial or otherwise. Borrower is not in default in any material respect in the performance, observance, or fulfillment of any of the obligations, covenants, or conditions

contained in any agreement or instrument to which it is a party or by which Borrower or the Mortgaged Property is bound.

### 15. Affirmative Covenants

Borrower agrees with and covenants unto Lender that until the Loan Obligations have been paid in full, Borrower shall (unless expressly waived in writing by Lender in Lender's sole and absolute discretion):

Payment of Loan/Performance of Loan Obligations. Duly and punctually pay or cause to be paid the principal and interest of the Loan in accordance with the terms of this Agreement, the Note, and the Loan Documents and duly and punctually pay and perform or cause to be paid or performed all Loan Obligations hereunder and under the other Loan Documents.

Maintenance of Existence. Borrower shall maintain and preserve its existence and good standing as a limited liability partnership in the State of Alabama and all other jurisdictions where necessary, and maintain all rights, privileges, licenses, patents, patent rights, copyrights, trademarks, trade names, franchises, and other authority to the extent material and necessary for the conduct of its business in the ordinary course as conducted from time to time. Without at least thirty (30) days' prior written notice, Borrower shall not (i) change its legal name, (ii) change its state of organization, (iii) change to another form of legal entity, or (iv) change the location of its chief executive office.

Accrual and Payment of Taxes. During each fiscal year, make accurate provision for the payment in full of all current tax liabilities of all kinds including, without limitation, federal and state income taxes, franchise taxes, payroll taxes, all other taxes, all required withholding of income taxes of employees, all required old age and unemployment contributions, and all required payments to employee benefit plans, and pay the same when they become due.

Insurance. Borrower shall obtain and shall continuously maintain the following policies of insurance:

(a) Liability Insurance. Liability insurance in an amount equal to at least $1,000,000 per occurrence, and $2,000,000.00 in the aggregate. All such liability insurance shall be written on an occurrence basis and name Lender as an additional insured;

(b) Property Insurance. "Special Cause of Loss-Special Form" (or similar form of coverage) broad form coverage on the Improvements and Equipment in an amount not less than the replacement cost thereof, with endorsements insuring against such potential causes of loss as shall be required by Lender;

(c) Business Interruption. Business interruption insurance (including rental value if any of the Mortgaged Property or Improvements is leased in whole or part) equal to not less than twelve (12) months estimated gross revenues less expenses not ordinarily incurred during the period of business interruption (but not less than twelve (12) months anticipated rents if the Mortgaged Property or Improvements is leased in whole or part);

(d) Workers Compensation. Workers' compensation insurance as required by the laws of the State of Alabama.

(e) Flood Insurance. If the Land is located in the flood plain, flood insurance equal to the lesser of (i) the principal amount of the Loan or (ii) the maximum amount of coverage available under the National Flood Insurance Program;

(f) Builder's Risk. To the extent the improvements of the Facility require additional policies of insurance or endorsements to Borrower's existing policies of insurance, Borrower shall obtain all such coverages; and

(g) Deductible. Maximum deductible on all coverages and policies shall be no greater than $10,000.00 unless otherwise stipulated by Borrower's insurance carrier and approved by Lender. The insurance carrier must be rated A, Class XII, or better, by Best's Rating Service. Such insurance policies shall be written on forms and with insurance companies satisfactory to Lender, shall be in amounts sufficient to prevent Borrower from becoming a co-insurer of any loss thereunder, shall insure Lender as a first mortgagee on the casualty and business interruption/loss of rents coverage under a standard mortgagee clause and shall name Lender as an "additional insured" on all required liability coverages and policies. Insurance certificates evidencing such insurance and evidence of payment of premiums thereon and written agreements by the insurer or insurers therein to give Lender thirty (30) days' prior written notice of any intention to cancel. If no such copy is available, Lender will accept a binder for a period not to exceed ninety (90) days. Borrower shall, within thirty (30) days prior to the expiration of any such policy, deliver insurance certificates evidencing the renewal of such insurance together with evidence of the payment of current premiums therefor. Any vacancy, change of title, tenant occupancy or use, physical damage, additional improvements or other factors affecting any insurance contract must be promptly reported to Lender. All binders, certificates of insurance, and original or certified copies of policies must name Borrower as a named insured, or as an additional insured, must include the complete and accurate property address and must bear the original signature of the issuing insurance agent. In the event of a foreclosure or trustee's sale under the Mortgage or any acquisition of the Mortgaged Property by Lender all such policies and any proceeds payable therefrom, whether payable before or after a foreclosure sale, or during the period of redemption, if any, shall become the absolute property of Lender to be utilized at its discretion. In the event of foreclosure or the failure to obtain and keep any required insurance Borrower empowers Lender to effect the above insurance upon the Mortgaged Property at Borrower's expense and for the benefit of Lender in the amounts and types aforesaid for a period of time covering the time of redemption from sale, and if necessary therefore, to cancel any or all existing insurance policies. Borrower agrees to pay Lender such fees as may be permitted under applicable law for the costs incurred by Lender in determining, from time to time, whether the Mortgaged Property are located within an area having special flood hazards. Such fees shall include the fees charged by any organization providing for such services.

Financial and Other Information. Provide the following financial statements and other information to Lender within ten (10) Business Days after Lender's request therefor, Borrower shall deliver to Lender such other information as Lender may reasonably request from time to time.

Books and Records. Keep and maintain or cause to be kept and maintained at all times at Borrower's office, and upon Lender's request make available at Borrower's office, complete and accurate books of account and records (including copies of supporting bills and invoices) adequate

to reflect correctly the results of the operation of the Mortgaged Property, and copies of all written contracts, leases and other instruments which affect the Mortgaged Property, which books, records, contracts, leases and other instruments shall be subject to examination and inspection at any reasonable time by Lender (upon reasonable advance notice, which for such purposes only may be given orally, except in the case of an emergency or following an Event of Default, in which case no advance notice shall be required); provided, however, that if an Event of Default has occurred and is continuing, Borrower shall deliver to Lender upon written demand all books, records, contracts, leases (if any) and other instruments relating to the Mortgaged Property, the Facility, or their operation. Borrower and Guarantor authorize Lender to obtain a credit report on Borrower or Guarantor at any time.

Payment of Indebtedness. Duly and punctually pay or cause to be paid all other Indebtedness now owing or hereafter incurred by Borrower or Guarantor in accordance with the terms of this Agreement, except such Indebtedness owing to those other than Lender which is being contested in good faith and with respect to which any execution against properties of Borrower or Guarantor has been effectively stayed and for which reserves and collateral for the payment and security thereof have been established in sufficient amounts as determined by Lender in its sole commercially reasonable discretion.

Financial Covenants.

       (h)    Solvency. Borrower shall at all times remain solvent for purposes of 11 U.S.C. § 548.

Leases. Maintain each of the Leases in full force and effect and timely perform all of Borrower's obligations thereunder and enforce performance of all obligations of each Tenant thereunder and not permit the termination, amendment, or assignment of any Lease unless the express written consent of Lender, not to be unduly delayed or withheld, is first obtained, which consent may be withheld in the sole and reasonable discretion of Lender. Upon the request of Lender, Borrower shall cause each Tenant to execute an SNDA in favor of Lender. In the event that Borrower enters any new Lease with a new Tenant, Borrower will notify Lender of such new Lease and, if requested by Lender, cause such new Tenant to execute an SNDA in favor of Lender.

Updated Appraisals. For so long as the Loan remains outstanding, if any Event of Default shall occur and be continuing beyond any applicable cure period hereunder, if any, then in any such event, Lender, may cause the Mortgaged Property to be appraised by an appraiser selected by Lender, and in accordance with Lender's appraisal guidelines and procedures then in effect, and Borrower agrees to cooperate in all respects with such appraisals and furnish to the appraisers all requested information regarding the Mortgaged Property and the Facility. Borrower agrees to pay all reasonable costs incurred by Lender in connection with such appraisal which costs shall be secured by the Loan Documents and shall accrue interest at the Default Rate until paid.

Compliance with Laws. Comply with all applicable covenants and restrictions of record and all laws, ordinances, rules and regulations and keep the Facility, the Land, and Improvements in compliance with all Requirements of Law, including, without limitation, the Americans with Disabilities Act and regulations promulgated thereunder, and laws, ordinances, rules and regulations relating to zoning, health, building codes, and setback requirements. Borrower shall operate the Facility at all times in compliance with all Requirements of Law. The Mortgaged Property shall comply with all applicable restrictions, conditions, ordinances, regulations and laws

of governmental departments and agencies having jurisdiction over the Mortgaged Property, and shall not violate any private restrictions or covenants or encroach upon or interfere with easements affecting the Mortgaged Property.

Notice of Fees or Penalties. Immediately notify Lender of the assessment of any fines or penalties against Borrower, Guarantor, the Facility, or the Mortgaged Property.

Management Agreement. Maintain the Management Agreement in full force and effect and timely perform all of Borrower's obligations thereunder and enforce performance of all obligations of Manager thereunder and not permit the termination, amendment or assignment of the Management Agreement unless the express written consent of Lender is first obtained, which consent may be withheld in the sole and absolute discretion of Lender; provided, however, that, prior to any Event of Default, such consent shall not be unreasonably withheld, delayed or conditioned.

Representations and Warranties. Immediately notify Lender in writing in the event any representation or warranty contained in this Agreement or any other Loan Document becomes untrue or there shall have been any material adverse change in any such representation or warranty.

Certificate. Within ten (10) days following Lender's written request, furnish Lender with a certificate stating that Borrower and Guarantor has complied with and are in compliance with all terms, covenants, and conditions of the Loan Documents to which Borrower or Guarantor is a party and that there exists no Default or Event of Default or, if such is not the case, that one or more specified events have occurred, and that the representations and warranties contained herein are true and correct in all material respects with the same effect as though made on the date of such certificate.

True and Correct. Borrower represents and warrants that its representations, warranties, and covenants contained herein and in the Loan Documents are true and correct in all material respects as of the date hereof and that any investor or participant in the Loan shall be a third party beneficiary of the representations, warranties and covenants set forth herein.

Continuing Obligation. Borrower covenants that in the event that any representation, warranty, or covenant contained herein and in the Loan Documents becomes untrue in any material respect after the date hereof, Borrower will so advise Lender in writing as soon as reasonably practical of such untruth (unless Lender learns of such untruth prior thereto and so notifies Borrower).

Ratification. Borrower covenants that it shall promptly, upon request of Lender, ratify and affirm in writing and shall cause Guarantor to ratify and affirm in writing the representations, warranties, and covenants contained in the Loan Documents as of such date or dates as Lender shall specify.

16. Negative Covenants

Until the Loan Obligations have been satisfied in full, Borrower shall not:

No Liens; Exceptions. Create, incur, assume, or suffer to exist any Lien upon or with respect to the Land, the Improvements, or any of Borrower's properties, rights, income, or other assets relating

thereto, including, without limitation, the Mortgaged Property whether now owned or hereafter acquired, other than the following permitted Liens (collectively, the "Permitted Encumbrances"):

    (i)    Liens at any time existing in favor of Lender;

    (j)    Encumbrances which are listed in Exhibit "E" attached hereto;

    (k)    the Leases;

    (l)    Disbursements previously agreed upon with Oakworth Bank in the amount of $450,000.

    (m)    Inchoate Liens arising by operation of law for the purchase of labor, services, materials, equipment or supplies, provided payment shall not be delinquent and, if such Lien is a lien upon any of the Land or Improvements, such Lien must be fully disclosed to Lender and bonded off and removed from the Land and Improvements within forty-five (45) days of its creation, in a manner satisfactory to Lender;

    (n)    Liens incurred in the ordinary course of business in connection with workers' compensation, unemployment insurance or other forms of governmental insurance or benefits, or to secure performance of tenders, statutory obligations, leases and contracts (other than for money borrowed or for credit received with respect to property acquired) entered into in the ordinary course of business as presently conducted or to secure obligations for surety or appeal bonds; and

    (o)    Liens for current year's taxes, assessments or governmental charges or levies provided payment thereof shall not be delinquent.

No Other Indebtedness. Incur any Indebtedness other than (i) the Loan and (ii) trade payables in the ordinary course of its business. Borrower shall not assume, guaranty, or become an obligor or surety for the obligations of any third party

Transfers. (a) Consummate any merger, consolidation, or similar transaction, or sell, assign, lease, or otherwise dispose of (whether in one transaction or in a series of transactions), all or substantially all of Borrower's assets (whether now or hereafter acquired) or dissolve, without the prior express written consent of Lender, which consent may be granted or refused in Lender's sole and absolute discretion; (b) permit a change in the percentage ownership interests of Borrower or the Persons owning Borrower, except for changes among existing owners of Borrower, unless the express written consent of Lender is first obtained, which consent may be granted or refused in Lender's sole and absolute discretion; provided, however that solely with respect to transfers of ownership interests among the existing owners of Borrower as of the date hereof, Lender's consent to such transfers may not be unreasonably withheld but may be conditioned upon (i) the execution and delivery of amendments or modifications of the Guaranty, and (ii) Lender's credit approval of the revised Guaranty and each Guarantor as of such date in time; or (c) sell, convey, mortgage, grant, bargain, encumber, pledge, assign, grant options with respect to, or otherwise transfer or dispose of (directly or indirectly, voluntarily or involuntarily, by operation of law or otherwise, and whether or not for consideration or of record) any of the Mortgaged Property or any legal or beneficial interest therein or permit a sale or pledge of a direct or indirect ownership interest in Borrower or any Person owning interests in Borrower, unless Lender's prior express written

consent is first obtained, which consent may be granted or refused in Lender's sole and absolute discretion.

Maintain Single Purpose Entity Status.

(p) Engage in any business or activity other than the ownership, operation and maintenance of the Mortgaged Property, and activities incidental thereto;

(q) Acquire or own any material assets other than (i) the Mortgaged Property, and (ii) such incidental machinery, equipment, fixtures and other personal property as may be necessary for the operation of the Mortgaged Property;

(r) Merge into or consolidate with any Person or dissolve, terminate or liquidate in whole or in part, transfer or otherwise dispose of all or substantially all of its assets (except as permitted in the Loan Documents) or change its legal structure, without in each case Lender's consent;

(s) Without the prior express written consent of Lender, amend, modify, terminate or fail to comply with the provisions of its Certificate of Formation, Operating Agreement or similar organizational document, as same may be further amended or supplemented, if such amendment, modification, termination or failure to comply would adversely affect its status as a Single Purpose Entity or its ability to perform its obligations hereunder, under the Note or any other Loan Document;

(t) Own any subsidiary or make any investment in, any Person without the consent of Lender, which consent will not be unreasonably withheld or delayed;

(u) Commingle its funds or assets with assets of, or pledge its assets with or for, any of its partners, Affiliates, or any other Person;

(v) Incur any debt, secured or unsecured, direct or contingent (including guaranteeing any obligation), other than the Loan and other Indebtedness described in Section 5.2, and trade payables incurred in the ordinary course of business,;

(w) Fail to maintain its records, books of account and Lender accounts separate and apart from those of its partners, principals and Affiliates, the Affiliates of any of its partners, principals and any other Person;

(x) Enter into any contract or agreement with any of its partners, principals or Affiliates, or the Affiliates of any of its partners, principals or Affiliates, except upon terms and conditions that are intrinsically fair and substantially similar to those that would be available on an arms-length basis with third parties;

(y) Seek its dissolution or winding up in whole, or in part;

(z) Maintain its assets in such a manner that it will be costly or difficult to segregate, ascertain or identify its individual assets from those of any of its partners, principals and Affiliates, the Affiliates of any of its partners, principals, Affiliates or any other Person;

(aa) Hold itself out to be responsible for the debts of another Person or pay another Person's liabilities out of its own funds;

(bb) Make any loans or advances to any third party, including any of its partners, principals or Affiliates, or the Affiliates of any of its members or principals;

(cc) Fail to have prepared and filed its own tax returns, unless Borrower has secured an extension for such filing or is properly contesting such filing in accordance with all Requirements of Law;

(dd) Fail either to hold itself out to the public as a legal Person separate and distinct from any other Person or to conduct its business solely in its own name, in order not (i) to mislead others as to the identity with which such other party is transacting business, or (ii) to suggest that it is responsible for the debts of any third party (including any of its partners or Affiliates, or any general partner, principal or Affiliate thereof); or

(ee) Fail to maintain adequate capital for the normal obligations reasonably foreseeable in a business of its size and character and in light of its contemplated business operations.

Change of Business. Make any material change in the scope or nature of its business objectives, purposes or operations, or undertake or participate in activities other than the continuance of its present business.

Changes in Accounting. Change Borrower's method of accounting, unless such change is permitted by GAAP, and provided such change does not have the effect of curing or preventing what would otherwise be an Event of Default or Default had such change not taken place.

Transaction with Affiliates. Enter into any transaction with a Person which is an Affiliate of Borrower other than in the ordinary course of Borrower's business and on fair and reasonable terms no less favorable to Borrower than those that Borrower could obtain in a comparable arms-length transaction with a Person not an Affiliate.

Change of Use. Enter into any new lease agreement of all or any portion of the Mortgaged Property unless Borrower first notifies Lender and provides Lender a copy of the proposed lease agreement, obtains Lender's express written consent thereto, which consent may be withheld in Lender's reasonable discretion, and obtains and provides Lender with a subordination, attornment, and nondisturbance agreement in form satisfactory to Lender, as determined by Lender in its reasonable discretion, from new tenant subordinating to all rights of Lender.

Place of Business. Change Borrower's chief executive office or principal place of business without first giving Lender at least thirty (30) days prior written notice thereof and promptly providing Lender such information and amendatory financing statements as Lender may request in connection therewith.

Dividends, Distributions, and Redemptions. Declare or pay any dividends or other distributions to Borrower's shareholders, members, or partners, as applicable, or purchase, redeem, retire, or otherwise acquire for value, any ownership interests in Borrower now or hereafter outstanding,

return any capital to Borrower's shareholders, members, or partners, as applicable, or make any distribution of assets to Borrower's shareholders, members, or partners, as applicable.

Dissolution.

    (ff)    engage in any dissolution, liquidation, consolidation, or merger with or into any other business entity;

    (gg)    transfer, lease, or sell, in one transaction or any combination of transactions, the assets of all or substantially all of the properties or assets of Borrower; or

    (hh)    modify, amend, waive, or terminate its organizational documents or its qualification and good standing in any jurisdiction.

Debt Cancellation. Cancel or otherwise forgive or release any claim or debt owed to Borrower by any Person, except for adequate consideration and in the ordinary course of Borrower's business.

Zoning. Initiate or consent to any zoning reclassification of any portion of the Land or seek any variance under any existing zoning ordinance or use or permit the use of any portion of the Land in any manner that could result in such use becoming a non-conforming use under any zoning ordinance or any other applicable land use law, rule or regulation, without the prior consent of Lender.

Use of Loan. Use any portion of the Loan for any costs and expenses not arising out of or related to the renovation of the Facility.

Other Claims. Incorporate in the Facility or allow any contractor to incorporate in the Facility any materials, fixtures or property that are subject to the claims of any other Person, whether pursuant to a conditional sales contract, security agreement, lease, mortgage or otherwise.

*[Rest of page intentionally left blank; signature page follows]*

**IN WITNESS WHEREOF**, the parties hereto have executed these presents, under seal, as of the date first set forth above.

_____
HUNTER RENFROE