# **EXHIBIT 4**

# AMENDED AND RESTATED MEMBERSHIP INTEREST PLEDGE AGREEMENT

> This amended and restated membership interest pledge agreement is made and executed for the purpose of restating, continuing, modifying and amending the terms of that certain membership interest pledge agreement, dated on or about October 8, 2018, executed by the Borrower in favor of ~~GID Capital LLC, Dunbar Investments LLC (predecessor in interest to~~ Anderson L. Glenn) and Samuel Haskell. This amended and restated membership interest pledge agreement shall constitute a true modification or amendment of the terms of the original membership interest pledge agreement which shall continue in full force and effect except as specifically modified herein. This amended and restated membership interest pledge agreement shall not constitute a novation, termination or satisfaction of the original membership interest pledge agreement. This amended and restated membership interest pledge agreement shall continue to secure the note referenced in this amended and restated membership interest pledge agreement.

**THIS AMENDED AND RESTATED MEMBERSHIP INTEREST PLEDGE AGREEMENT** (this "Agreement") is made and entered into this 1st day of May June, 2020, by and between Hunter Renfroe ("Borrower"), and Samuel Haskell, Anderson L. Glenn and GID Capital, LLC (collectively, "Secured Party"). HHR

**WHEREAS,** Borrower owns 100% of the membership interests in Avondale Holdings, LLC, an Alabama limited liability company (the "Company");

**WHEREAS,** the Company owns certain real property located in Jefferson County, Alabama (the "Property"). Borrower obtained from Secured Party a loan to the Borrower in the current principal amount of $1,080,000.00 (the "Equity Loan") to enable the Company to acquire the Property;

**WHEREAS,** as a condition to extending the term of the Equity Loan to Borrower, Secured Party required Borrower to enter into the following notes dated of even date herewith: Amended and Restated Secured Promissory Note from Borrower in favor of Samuel Haskell in the principal sum of $730,000.00; Amended and Restated Secured Promissory Note from Borrower in favor of Anderson L. Glenn in the principal sum of $150,000.00; Amended and Restated Secured Promissory Note from Borrower in favor of GID Capital, LLC in the principal sum of $200,000.00 (collectively, the "Note" and together with any other documents required by Secured Party in

connection with the Equity Loan, the "Loan Documents");

**WHEREAS,** in addition to all of the obligations of Borrower as set forth in the Loan Documents (collectively, the "Obligations"), as a condition to making the Equity Loan to Borrower, Secured Party requires Borrower to pledge his membership interests in the Company to Secured Party pursuant to the terms and conditions herein; and

**WHEREAS,** Borrower now desires to enter into this Agreement to secure the Obligations and all renewals, extensions and modifications thereof pursuant to the terms and conditions herein.

**NOW, THEREFORE,** in consideration of the premises, the mutual promises hereinafter contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound hereby, hereby covenant and agree as follows:

1. <u>Pledge of Membership Interests</u>. In order to induce Secured Party to extend the term of the Equity Loan, Borrower does hereby pledge, transfer, assign, hypothecate, convey and deliver to Secured Party all of his membership interests in the Company and his Company Interest in the Company (as defined in the Operating Agreement of the Company dated October 13, 2017, as amended) (collectively, the "Membership Interests"), and hereby grants to Secured Party a lien on and security interest in and to the Membership Interests and in all of the proceeds thereof, including all income, interest, dividends, cash, warrants, rights (financial or otherwise) and other property or proceeds from time to time received, receivable, or otherwise distributed in respect of or in exchange for any or all of the Membership Interests (hereinafter, collectively the "Pledged Interest"), as collateral security for the prompt and complete payment and performance of the Obligations. In connection with the foregoing grant of a security interest, Borrower hereby authorizes the Secured Party to make and file UCC-1 Financing Statements with the Alabama Secretary of State for purposes of perfecting Secured Party's security interest in the Pledged Interest and to file such amendments to said UCC-1s as are necessary to continue Secured Party's perfected security interest in the Pledged Interest.

2. <u>Distributions</u>. So long as there is no default by

Borrower in performance of the Obligations, Borrower shall have the right to all distributions from the Company to which Borrower is entitled as the owners of the Pledged Interest. If at any time there is a default by the Company in performance of the Obligations, prior to any foreclosure upon the Pledged Interest under this Agreement, Borrower agrees to promptly notify Secured Party of any distributions from the Company to Borrower in respect of the Pledged Interest whether in the form of cash, property, securities or otherwise, and to deliver the same to Secured Party as additional collateral security for the prompt and complete payment and performance of the Obligations within three (3) business days of Secured Party's request therefor. Borrower further agrees that the Pledged Interest, and any substitutes therefor or additions thereto, which Secured Party in its sole discretion may elect to take, together with any interest, membership interests rights, Company Interest rights to subscribe, distributions, new securities and other property to which Borrower may become entitled by reason of the ownership of the Pledged Interest during the existence of this Agreement, are to be held by Secured Party as continuous security for the Obligations.

3. <u>Secured Party's Remedies</u>. If the Borrower or Company fails to perform the Obligations as required by the Loan Documents or breaches any of the representations or warranties under this Agreement (an "Event of Default"), Secured Party may, at its option, and without demand or notice of any kind, proceed to enforce payment of the Obligations, and shall have, and may exercise, any or all of the rights and remedies of a secured party under the Uniform Commercial Code (the "UCC") or otherwise available to Secured Party by law and/or under the Loan Documents, and, without limiting the generality of the foregoing, Secured Party may:

(a) cause the Pledged Interest to be transferred to its name or to the name of its nominee or nominees (and Borrower hereby irrevocably appoints Secured Party as its attorney-in-fact for such purposes) and thereafter exercise as to the Pledged Interest all the rights, powers and remedies of an owner;

(b) collect by legal proceedings or otherwise all distributions, priority returns and other similar sums now or hereafter payable on account of the Pledged Interest, and hold the same as collateral, or apply the same to any of the

Obligations secured hereby (the manner and distribution of such application to be in the sole discretion of Secured Party);

(c)   enter into any extension, subordination, reorganization, deposit, merger or consolidation agreement, or any other agreement relating to or affecting the Pledged Interest, and in connection therewith deposit or surrender control of the Pledged Interest, and accept other property in exchange therefor and hold or apply such property or money so received in accordance with the provisions hereof; and/or

(d)   without demand of performance or other demand, advertisement or notice of any kind (except the notice of time and place of public or private sale) to or upon Borrower (all and each of which demands, advertisements and/or notices are hereby expressly waived), forthwith sell, assign, give options to purchase, contract to sell or otherwise dispose of and deliver the Pledged Interest, or any part thereof, in one or more parcels at public or private sale or sales, at any exchange, broker's board or at any of the holder's offices or elsewhere upon such terms and conditions as Secured Party may deem advisable and at such prices as Secured Party may deem best, for future delivery without assumption of any credit risk, with the right to Secured Party upon any such sale or sales, public or private, to purchase the whole or any part of the Pledged Interest so sold, free of any right or equity of redemption in any Borrower, which right or equity is hereby expressly waived or released.

In no way limiting the foregoing, any act or omission by Borrower and/or the Company that results in a default under the loan to Company from Oakworth Capital Bank to Company pursuant to a Loan Agreement dated June 6, 2018 as amended by First Amendment to Loan Agreement and other Loan Documents dated April 29, 2019 and by Second Amendment to Loan Agreement and other Loan Documents dated July 2, 2019 (as amended, the "Oakworth Loan") shall constitute an Event of Default under this Agreement.

4.   Representations and Warranties. Borrower and Company jointly and severally represent and warrant the following, both on execution of this Agreement and

continuously during its term:

    a.    <u>Ownership of Pledged Collateral</u>. Borrower is the sole legal and equitable owner of and has good and marketable title to the Pledged Interest and record and beneficial owner of the Pledged Interest.

    b.    <u>Organization and Good Standing</u>. Company is duly organized, validly existing and in good standing under the laws of the state of its formation and has all requisite Company power and authority to enter into this Agreement and to perform its other obligations hereunder.

    c.    <u>Authorization</u>. All action necessary for the authorization, execution and delivery of this Agreement and the performance of all obligations of Company and Borrower hereunder and its consummation of the transactions contemplated hereby has been taken. This Agreement, when executed and delivered by Company, constitutes valid and legally binding obligations of Company and Borrower, enforceable against them in accordance with its terms.

    d.    <u>No Conflict</u>. The execution and delivery by Company and Borrower of this Agreement will not (i) violate or conflict with its respective governing documents, (ii) violate, conflict with, or give rise to any right of termination, cancellation, rescission or acceleration under any agreement, lease, security, license, permit, or instrument to which it is a party, or to which it or any of its assets is subject, (iii) result in the imposition of any encumbrance on any its assets (except for the security interest granted pursuant to this Agreement), (iv) violate or conflict with any laws, or (v) require any consent, approval or other action of, notice to, or filing with any person, except for those that have been obtained or made or will be obtained or made prior to closing.

    e.    <u>Manager</u>. Borrower is the Manager of Company.

5.    <u>Term</u>. Notwithstanding anything contained herein to the contrary, this Agreement shall remain in full force and effect until the satisfaction of all of the Obligations.

6. <u>Entire Agreement; Modification of Agreement</u>. This Agreement constitutes the entire understanding of the parties hereto with respect to the subject matter hereof. This Agreement may not be modified, altered or amended except by agreement in writing signed by all of the parties hereto.

7. <u>Governing Law</u>. This Agreement shall be governed by, and construed in accordance with, the laws of the State of Alabama. The rights of Secured Party specified herein shall be in addition to, and not in limitation of Secured Party's rights under the UCC, as amended from time to time, or any other statute or rule of law conferring rights similar to those conferred by the UCC, and under the provisions of the Loan Documents.

8. <u>Counterparts</u>. This Agreement may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed shall constitute an original, but all of which when taken together shall be one and the same instrument.

9. <u>Severability</u>. Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law; provided, however, if any provision of this Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.

10. <u>Costs of Collection</u>. Borrower hereby agrees to pay all costs of Secured Party's collecting or attempting to collect hereunder, including a reasonable attorney's fee.

11. <u>Proceeds of the Pledged Interest</u>. Proceeds of the Pledged Interest are claimed by Secured Party, but this does not constitute consent by Secured Party to the sale of the Pledged Interest without Secured Party's written consent.

12. <u>No Waiver</u>. No failure on the part of Secured Party to exercise, and no delay in exercising, any right or remedy hereunder shall operate as a waiver thereof by Secured Party, nor shall any single or partial exercise by Secured Party of any right or remedy hereunder preclude any other future exercise thereof or the exercise of any other right or remedy.

13. <u>Assignment</u>. This Agreement and all of the provisions hereof shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns. Borrower may not assign its obligations under this Agreement without the prior written consent of Secured Party. Secured Party may assign its rights under this Agreement without the prior written consent of Borrower. Should this Agreement be assigned by Secured Party to another party, the term "Secured Party" as used herein shall be deemed to refer to any such assignee.

*[Rest of page intentionally left blank; signature page follows]*

IN WITNESS **WHEREOF,** the parties hereto have executed these presents, under seal, as of the date first set forth above.

BORROWER:

*/s/ Hunter Renfroe/*

HUNTER REFROE

Consented to:

AVONDALE HOLDINGS, LLC

By: */s/ Hunter Renfroe/*

    Hunter Renfroe
Its:    Manager

SECURED PARTY:

SAMUEL HASKELL

*/s/ Samuel D. Haskell/*

ANDERSON L. GLENN

*/s/ Anderson L. Glenn/*

GID CAPITAL, LLC

By: *(signature)*

Glenn Drennan
Its: owner

*(signature)*

F:\PGS\Haskell\Renfroe Loan\Amended and Restated Membership Interest Pledge Agt 5.28.2020.docx

2